# Authority of Congress to Regulate
# Wiretapping by the States

Congress has authority under the Commerce Clause to regulate state wiretapping practices by prescribing a rule of evidence in state courts, limiting the authority of state officials to tap wires and to disclose and use information thereby obtained, prescribing the grounds and findings on which a state court may issue wiretap orders, and directing state courts to file reports with federal officials.

February 26, 1962

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

One question presented by the Department's wiretap bill is the constitutional authority of Congress to prescribe a rule of evidence in state courts, to limit the authority of state officials to tap wires and to disclose and use information thereby obtained, to prescribe the grounds and findings on which a state court may issue wiretap orders, and to direct state courts to file reports with federal officials.

Congress's power to do all of these things rests primarily on its power to regulate interstate commerce. The nation's telephone and telegraph systems are integrated networks, used for the transmission of messages across state lines. Congress has the power to preserve the integrity of those systems, and hence to prohibit interception of both interstate and intrastate communications. *Weiss v. United States*, 308 U.S. 321 (1939). In so doing, it may prohibit action by state officers pursuant to state law. *Benanti v. United States*, 355 U.S. 96 (1957). Since Congress can prohibit all interceptions of wire communications, it can also permit interception on such terms and conditions as it deems appropriate to protect the public interest. In particular, it can adopt appropriate safeguards to protect the privacy of users of the telephone and telegraph systems. To aid in enforcing these limitations, it can remove an incentive to unlawful wiretapping by making inadmissible any evidence derived therefrom. And to enable Congress to review the effectiveness of its legislation, it can require reports.

Unregulated wiretapping would "impinge severely on the liberty of the individual." *Schwartz v. Texas*, 344 U.S. 199, 205 (1952) (Douglas, J., dissenting). The fear of such tapping may be a deterrent to free expression. Hence, while the Fourth Amendment is inapplicable, *Olmstead v. United States*, 277 U.S. 438 (1928),[*] unregulated wiretapping by public officials might well raise constitutional issues under the Due Process Clauses of the Fifth and Fourteenth Amendments. Hence

---

[*] Editor's Note: *Olmstead* was subsequently overruled in relevant part by *Katz v. United States*, 389 U.S. 347 (1967); *see also Berger v. New York*, 388 U.S. 41, 64 (1967) (Douglas, J., concurring) ("I join the opinion of the Court because at long last it overrules *sub silentio Olmstead v. United States*, 277 U.S. 438, and its offspring and brings wiretapping and other electronic eavesdropping fully within the purview of the Fourth Amendment.").

the provisions of the bill restricting state action can also be sustained as an exercise of Congress's power to enforce the Fourteenth Amendment.

Where Congress has regulatory authority under the Commerce Clause, the war power, etc., the Supreme Court has frequently sustained limitations on state courts and other state officials as "necessary and proper" to carry into execution the granted powers. U.S. Const. art. I, § 8, cl. 18. For example:

> *Ullmann v. United States*, 350 U.S. 422 (1956) (immunity from prosecution in a state court);

> *Adams v. Maryland*, 347 U.S. 179 (1954) (prohibition against use in state court of evidence given before congressional committee);

> *Kalb v. Feuerstein*, 308 U.S. 433 (1940) (prohibition against state court foreclosure proceeding);

> *Farmers Educ. & Coop. Union v. WDAY, Inc.*, 360 U.S. 525 (1959) (immunity from state libel action); and

> *Testa v. Katt*, 330 U.S. 386 (1947) (requirement that state courts enforce federal act).

In situations in which Congress has required state courts to enforce federal rights, it has prescribed state practice in considerable detail. Thus, in the Immigration and Nationality Act of 1952, Congress conferred jurisdiction to naturalize persons as citizens of the United States on state courts of record (8 U.S.C. § 1421(a) (Supp. II 1959–60)); prescribed in detail the form of petitions, the procedure on hearings, and the form of certificates (8 U.S.C. §§ 1445–1449 (1958)); and required clerks of state courts to file certain reports with the Attorney General (8 U.S.C. § 1450 (1958)). Similarly, in numerous cases in state courts under the Federal Employers' Liability Acts, 45 U.S.C. §§ 51 *et seq.* (1958), and the Jones Act, 46 U.S.C. § 688 (1958), the courts have held that various state rules of evidence and practice—such as burden of proof of contributory negligence, rules of construction of pleadings, right to directed verdict or to judgment notwithstanding the verdict, and statutes of limitation—have been superseded by the federal act. *E.g.*, *Second Employers' Liability Cases*, 223 U.S. 1 (1912); *Cent. Vt. Ry. v. White,* 238 U.S. 507 (1915); *Bailey v. Cent. Vt. Ry.* 319 U.S. 350 (1943); *Brown v. W. Ry. of Ala.*, 338 U.S. 294 (1949); *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359 (1952); *Cox v. Roth*, 348 U.S. 207 (1955).

In *Schwartz* v. *Texas*, 344 U.S. 199, 203 (1952), the Court reserved decision on whether Congress had power to render evidence obtained by illegal wiretapping inadmissible in a state court. However, in *Benanti* v. *United States*, 355 U.S. 96, 101 (1957), the rationale of the *Schwartz* decision was stated to be that Congress

would not be presumed to have thwarted a state rule of evidence "in the absence of a clear indication to that effect."

The *Schwartz* decision rested in part (344 U.S. at 201) on *Wolf v. Colorado*, 338 U.S. 25 (1949), which has since been overruled by *Mapp v. Ohio,* 367 U.S. 643 (1961). In holding, in *Mapp*, that the Fourth and Fourteenth Amendments require the exclusion in state courts of evidence derived from an unlawful search, the Court relied on the following practical considerations: (1) the exclusionary rule is the only effective means to enforce the prohibition against unlawful searches, since it removes the incentive to disregard it (367 U.S. at 656); (2) by admitting evidence unlawfully seized, the states encourage disobedience to the Federal Constitution (*id.* at 657); (3) the coexistence of two different rules of evidence in federal and state courts is productive of confusion and mischief, and an invitation to evasion of the law (*id.* at 657–58). These considerations are essentially applicable to the rule of evidence proposed in section 3 of the present bill. Since the Court deemed the exclusionary rule an appropriate means of enforcing the constitutional prohibition against unlawful seizures, Congress can properly deem it an appropriate means of enforcing the statutory prohibition of unlawful wiretaps.

NICHOLAS deB. KATZENBACH
*Assistant Attorney General*
*Office of Legal Counsel*
