

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 2, 1972

Honorable Larry Teaver
Chairman, State Board of Insurance
1110 San Jacinto
Austin, Texas  78701

Opinion No. M-1132

Re: Whether the proposed regulations of the State Board of Insurance for the safe movement and operation of mobile service units and dispensing of flammable liquids are invalid because in conflict with the federal rules and regulations which implement the federal Occupational Safety and Health Act and related questions?

Dear Mr. Teaver:

You have requested an opinion of this office on the above captioned matter and we quote from your letter, (in part):

"The proposed regulations as suggested by the advisory committee [to the State Board of Insurance], which we attach hereto as Exhibit 'A', contain provisions that apparently would permit dispensing of flammable liquids from a tank vehicle to a motor vehicle on premises open to the public. (See Exhibit 'A', Chapter V, Article 5013, Parking, pages 3-4)

"The State Board of Insurance has heretofore promulgated Rules and Regulations for the Safe Storage, Handling and Use of Flammable Liquids at Retail Service Stations, which Rules and Regulations are attached as Exhibit 'B'.

"It has come to the attention of the Board that the Federal Congress has passed an Occupational Safety and Health Act of 1970, pertinent parts of

which became effective February 15, 1972.   Section
1910. 106, Part II of Title 29, Chapter XVII, Volume
36, Federal Register, of the said OSHA is attached
hereto as Exhibit 'C'.   It contains provisions to
which the Board directs your attention, and we pose
the following questions to your office:

> "1.   Would the proposed regulations in
> Exhibit 'A' be in conflict with the cited
> provisions of Exhibit 'C'?
>
> "2.   Are the existing regulations of Exhibit
> 'B' in conflict with the cited provisions of
> Exhibit 'C'?
>
> "3.   If a conflict is inherent in the state
> regulations (either exisiting or proposed)
> and the standards promulgated by the
> Secretary of Labor in part 1910 (OSHA),
> will the federal regulations pre-empt the
> state regulations?"

Question No. 3 asks whether the federal regulations found in
Exhibit C will pre-empt either the proposed or existing regulations in
the field of occupational safety and health.   Article 1111c-1, Vernon's
Texas Penal Code, as amended by Acts 62nd Legislature, R. S.  1971,
Chapter 226, p. 1074, directed the State Board of Insurance to
"formulate, adopt and promulgate rules and regulations for the safe
storage, handling and use of flammable liquids at retail service stations"
and to "formulate, adopt and promulgate rules and regulations for the
safe movement and operation of mobile service units. "

The federal statute, the William-Steiger Occupational Safety and
Health Act of 1970,  29 USC § 651 et seq (The Act),  became effective
on April 28, 1971.   The primary purpose of The Act is to reduce on-
the-job injuries and to provide employees with safe working conditions.
The first section declares that the Congressional policy is:

> ". . . to provide for the general welfare, to
> assure so far as possible every working man and

woman in this nation safe and healthful working conditions and to preserve our human recourse.

"(3) . . . by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to business affecting inter-state commerce and . . .

"(11) . . . by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States to assist in identifying their needs and responsibilities in the area of occupational safety, to develop plans in accordance with the provisions of this Chapter, to improve the administration and enforcement of State occupational safety and health laws." 29 USC § 651 (Emphasis added.)

The Act provides a method whereby the states may continue to enforce their own safety standards and draft others. 29 USC § 667. Section 667 (b) entitled "Submission of State Plan for Development and Enforcement of State Standards to Preempt Applicable Federal Standards" provides:

"any state which, at any time, desires to assume full responsibility for development and enforcement of their occupational safety and health standards relating to any occupational safety or health issue with respect to which a federal standard has been promulgated under § 655 of this Title shall submit a state plan for the development of such standards and their enforcement." (Emphasis added.)

In connection with state jurisdiction and enforcement of standards, The Act also provides that the Secretary of Labor may make federal grants to states to assist them in identifying and studying safety needs and to assist them in developing their state plans under § 667 (b).

Initially, it is to be presumed that a duly enacted statute of the State of Texas is valid against objection on constitutional grounds. 12 Tex. Jur. 2d, Const. Law, Sec. 42, pp. 385-386.

The basic requirements of the doctrine of preemption are clear. Mr. Justice Douglas, in discussing whether a Federal Act preempted a previously unregulated area (as here) observed:

> "Congress legislated here in a field which the states have traditionally occupied. See Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Davis Warehouse Company v. Bowles, 321 U. S. 144, 148-149, 64 S. Ct. 474, 477, 478, 88 L. Ed. 635. So we start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. Napier v. Atlantic Coast Line Railway Company, 272 U. S. 605, 611, 47 S. Ct. 207, 209, 71 L. Ed. 432, Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U. S. 740, 749, 62 S. Ct. 820, 825, 86 L. Ed. 1154. " Rice v. Santa Fe Elevator Company, 331 U. S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947).

The Supreme Court of the United States has emphasized that ". . . this Court's decisions. . . enjoin(s) seeking out conflicts between state and federal regulation where none clearly exists. " Huron Portland Cement Co. v. City of Detroit, 362 U. S. 440, 446 (1960). A clear showing of conflict is required. Schwartz v. State of Texas, 344 U. S. 199, 203 (1952).

In Florida Lime and Avocado Growers, Inc. v. Paul, 373 U. S. 132, 142 (1963) the court held:

> "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.

> "The principle to be derived from our decisions
> is that federal regulation of a field of commerce should
> not be deemed preemptive of state regulatory power
> in the absence of persuasive reasons -- either that
> the nature of the regulated subject matter permits
> no other conclusion, or that the Congress has un-
> mistakably so ordained.  See, e. g. , Huron Portland
> Cement Co. v. Detroit, supra. " (Emphasis added. )

Further in Colorado Anti-Discrim. Comm. v. Continental Air Lines, 372 U. S. 714, 721 (1963), the Supreme Court, in ruling on the validity of a state statute under the Supremacy Doctrine, held:

> ". . . that the mere 'fact of identity does not
> mean the automatic invalidity of State measures.' "
> (Emphasis added. )

The Occupational Safety and Health Administration (OSHA) recently issued a Policy Statement, pertinent provisions of which reveal the intent of both Congress and the OSHA:

> "The mandate of most State and local fire
> marshals is quite broad - to promote fire pre-
> vention in order to protect all persons in virtually
> all types of establishments and facilities, including
> places of employment.  All States and territories
> have some fire regulation activity; forty-five States
> have State fire marshals with statewide jurisdiction
> usually operating as an independent department, or
> as part of the State insurance department, or as a
> part of the State public safety agency.  Counterparts
> of the State fire marshals carry out this responsibility
> in municipalities or at the county level.  It is estimated
> that approximately 15, 000 persons are involved in fire
> marshal activities at all levels throughout the country.
>
> "It is the belief of the Occupational Safety and
> Health Administration that it was not Congress' intent
> in passing the Act to preempt these extensive activities
> with respect to places of employment covered by the

Act.  While there is an overlap of jurisdiction in workplaces, the Occupational Safety and Health Administration feels that the much broader goals of fire marshals' activities preclude their being preempted, despite the promulgation of Section 6 standards substantially the same as those enforced by fire marshals. Thus, State fire marshal activities will not be preempted regardless of whether or not a State 18(b) plan is in effect. "  (Emphasis supplied. )

This office is of the opinion that the intent of The Act is to encourage the state "to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws, " and that since the Congress did not intend to preempt the field of occupational health and safety, the rules and regulations (either adopted or proposed) regarding the safe movement and operation of mobile service units and dispensing of flammable liquids and the "Rules and Regulations for the Safe Storage, Handling and Use of Flammable Liquids at Retail Service Stations" are not preempted by the regulations promulgated by the Secretary of Labor pursuant to the Occupational Safety and Health Act of 1970.

Since our answer to Question No. 3 is in the negative, Questions No. 1 and 2 are not answered.

## SUMMARY

The regulations promulgated by the Secretary of Labor pursuant to the Occupational Safety and Health Act of 1970, 84 Stat. 1593, 1600; 29 U.S.C. 655, 657, do not preempt the proposed regulations concerning "Mobile Service Units" or the existing regulations regarding the storage, handling and use of flammable liquids at retail service stations.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James Hackney
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James Quick
Lynn Taylor
Van Thompson, Jr.
Sally Phillips

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant